SANDRA CABRINA JENKINS, Judge.
h This is an appeal from a judgment partially granting and partially denying opposing motions to quash and to compel a records deposition and subpoena duces te-cum issued to JTMC Enterprises, LLC (“JTMC”), a non-party to the underlying suit, for the production of financial' documents and tax returns. The trial' court’s September 25, 2014 'judgment ordered JTMC to deliver certain financial documentation for an in camera inspection and further ruling from the trial court. JTMC now appeals the trial court’s judgment partially denying its motion to quash and partially granting the motion to compel; Channelside' Services, LLC (“Channel-side”) appeals the trial court’s judgment partially denying its motion to compel.
Upon our review of this matter, in light of applicable Louisiana law, we find the trial court erred in partially granting the motion to compel and in ordering JTMC to produce certain financial documents' of its limited liability company (LLC), even for the limited purpose of an in camera inspection and review by the trial court. For the following reasons, we revérse that part of the trial court’s | ¿judgment- ordering the production of financial documents of JTMC for an in camera inspection, and we amend the judgment to wholly grant the motion to quash filed by JTMC and wholly deny the motion to compel filed by Channelside,
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Channelside, is the judgment creditor of defendant, Chrysochoos Group, Inc. (“CGI”), a Florida corporation, pursuant to a money judgment rendered and signed on October 25, 2013 in the Thirteenth Judicial Circuit Court for Hillsbor-ough County, Florida. Channelside initiated the underlying suit against CGI by filing an ex parte petition to make the Florida judgment executory in the Civil District Court for Orleans Parish, in accordance with the Louisiana Enforcement of Foreign Judgments Act, La. R.S. 13:4241, et seq. On .November 21, 2013, the trial court ordered Channelside’s judgment against CGI be made executory in Civil District Court. ’
On January 7, 2014, seeking to enforce its rights as a judgment creditor, Channel-side filed a motion and application for a charging order against JTMC, a Louisiana limited liability company in which CGI owns a fifty percent membership interest.[1] Pursuant to La. R.S. 12:1331 of the Louisiana Limited Liability ’ Companies ■ Act, Channelside sought to charge CGI’s membership interest in JTMC with the payment of the unsatisfied amount of the *754 Florida judgment, $352,325.81,13with interest.[2] Following a hearing on Channel-side’s motion, the trial court granted the motion for a charging order and charged CGI’s membership interest in JTMC with payment of the unsatisfied amount of Channelside’s judgment against CGI.
On April 23, 2014, Channelside issued a notice of records deposition and subpoena duces tecum to JTMC for the production of various business and financial documents of the LLC.[3] In response, JTMC filed a motion to quash the records deposition and subpoena. JTMC specifically sought to quash the production of its bank accounts, account registers, federal and state income tax returns, sales tax returns, financial statements, and general ledgers from 2008 to the. present. Channelside then filed an opposition to JTMC’s motion to quash and a motion to compel JTMC to respond to the records deposition and subpoena duces tecum. The trial court set the opposing motions to quash and to compel for a hearing on September 12, 2014.
In support of its motion to compel, Channelside argued that all of the requested discovery was necessary for the enforcement of the charging order and the execution of Channelside’s judgment against CGI. Channelside sought to ^examine JTMC’s documents to discover any amounts owed to CGI by JTMC that Channelside could claim in execution of its judgment against CGI. Channelside further argued that Louisiana statutes pertaining to judgment debtor examination and discovery permitted a judgment creditor to examine any third party upon any matter relating to the judgment debtor’s property.
In support of the motion to quash, JTMC argued that the requested discovery was unduly burdensome, not supported by a showing of good cause, and restricted under specific provisions of the Louisiana LLC Act. Pursuant to specific provisions of the Act, JTMC argued that the charging order obtained by Channelside only entitled Channelside to the rights of an assign-ee of a membership interest, and an as-signee does not have the right to inspect the books and records of an LLC.
At the conclusion of the hearing, the trial court partially granted and partially denied the motion to compel and the motion to quash. The trial court’s September 25, 2014 judgment ordered JTMC to submit any evidence of indebtedness by JTMC to CGI, “including, but not limited to promissory notes, loans, payments or distributions,” from January 1, 2011 to the present for an in camera inspection to review whether the documentation contains any discoverable information to be produced to Channelside.[4]
*755 ROn September 30, 2014, Channel-.side filed a notice of intent to seek supervisory review of the trial court’s judgment and, subsequently, filed a timely writ, application with this Court. Prior to this Court’s disposition in that writ application, on October 31, 2014, JTMC filed a motion and order for suspensive appeal of the trial court’s September 25, 2014 judgment; that same day, the trial court granted the sus-pensive appeal. On November 12, 2014, while its supervisory writ was still pending, Channelside filed a petition for devolu-tive appeal of the September 25, 2014 judgment; the trial court granted the de-volutive appeal. On November , 18, 2014, this Court denied Channelside’s 'writ application'.[5] Both appeals were timely filed with this Court and lodged under the same appeal number.[6]
Before addressing the merits of the cross-appeals of the trial court’s September 25, 2014 judgment, we briefly address JTMC’s motion to dismiss the appeal filed by Channelside.
MOTION TO DISMISS APPEAL
JTMC filed a motion to dismiss the devolutive appeal filed by Channelside. JTMC argues that Channelside’s appeal should be dismissed because it raises the | fiSame issue on appeal as presented- for supervisory review within Channelside’s prior writ application, which was denied by this Court. Channelside Services, LLC v. Chrysochoos Group, Inc., unpub., 14-1156 (La.App. 4 Cir. 11/18/14). JTMC argues that this Court properly denied Channel-side’s writ application and, pursuant to the law of the case doctrine, if this Court finds no error in the writ-disposition then Chan-nelside’s appeal should be dismissed.
 Although Channelside’s appeal raises the same issue as previously presented to this Court for supervisory review, the denial of Channelside’s writ application does not bar our .reconsideration of, or a different conclusion on, the same issue when raised on appeal from a final judgment. See Leblanc v. 1555 Poydras Corp., 14-0610, p. 6 (La.App. 4 Cir. 12/17/14), 156 So.3d 1222, 1226 (collecting cases). “The denial of a writ by an appellate court is nothing more than the appellate court declining to exercise its supervisory jurisdiction.” Johnson v. Mike Anderson’s Seafood, Inc., 13-0379, pp. 5-6 (La.App. 4 Cir. 6/11/14), 144 So.3d 125, 130. Language or reasons given in a writ denial are without effect and have no binding force. Davis v. Jazz Casino Co., L.L.C., 03-0276, 03-1223, p. 1 (La.6/6/03), 849 So.2d 497, 498 (citing Bulot v. Intracoastal Tubular Services, Inc., 02-1035 (La.6/14/02), 817 So.2d 1149). In this case, the panel considering the earlier writ ap *756 plication simply declined to exercise supervisory jurisdiction and denied the writ without any reasons. Therefore, we give no deference to this Court’s previous 17denial of Channelside’s writ application raising the same issue, and we deny the motion to dismiss Chahnelside’s appeal.[7]
DISCUSSION
Before addressing the merits of each appeal,' we' note that, generally, a judgment involving a preliminary discovery matter would be an interlocutory, non-appealable judgment. See La-, C.C.P. art. 1841; La. C.C.P. art. 2088(C). In this casé, however, the judgment at issue wholly resolves the merits of the singular issue between JTMC,' a non-party to the underlying suit, and the party seeking discovery, Channelside. “The jurisprudence in this circumstance is to the effect that a judgment on a motion to quash a deposition subpoena is in fact appealable- because -it resolves all of the issues between the non-party deponent and the party seeking the deposition.” Gariepy v. Evans Industries, Inc., 06-106, p. 4 (La.App. 5 Cir. 9/25/07), 968 So.2d 753, 754-55 (citing Larriviere v. Howard, 00-186, p. 3 (La.App. 3 Cir. 10/11/00), 771 So.2d 747, 750); see St Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., L.L.C., 14-0286, p. 1 (La.App. 4 Cir. 8/27/14), 147 So.3d 1266. Therefore, in accordance with the relevant jurisprudence, we conclude that the judgment at issue is a final, appealable | ¿judgment,- We now turn to address the merits of each appeal from the trial court’s September 25,2014 final judgment.
In their respective appeals of the trial court’s judgment, JTMC and Channelside each argue that the trial court abused its discretion by partially granting and partially denying the motion to quash filed by JTMC and the motion to compel filed by Channelside. Channelside seeks reversal of the trial court’s judgment insofar as the trial court partially denied its motion to compel by refusing to order the production of all requested documents from JTMC to Channelside. JTMC seeks reversal of the trial court’s judgment insofar as it partially denies JTMC’s motion to quash the records deposition and subpoena duces te-cum, partially grants Channelside’s motion to compel, and orders the production of certain financial documents of JTMC for an in camera inspection.
In ruling upon discovery matters, the trial court is vested with broad discretion and, upon review, an appellate court should not disturb such rulings absent a clear abuse of discretion. Sercovich v. Sercovich, 11-1780, p. 5 (La.App. 4 Cir. 6/13/12), 96 So.3d 600, 603.
Channelside, in its appeal, argues that the trial court erred in failing to wholly grant its motion to compel and refusing to order production of the requested discov *757 ery from JTMC to'Channelside in-accordance with the general rules of discovery and the more specific, procedural rule of La. C.C.P. art. 2451(B), - In .reply to Chan-nelside’s appeal and in support of its own appeal, JTMC argues that specific provisions of the Louisiana Limited Liability Companies Act, La. R.S. |912:1301, et seq., expressly restrict a judgment creditor of á member of an LLC to obtain statutorily limited rights as an assignee of the niem-bership interest that specifically do( not include the right to inspect the records of the LLC. JTMC argues that the more specific LLC statutes are controlling over the more general statutes governing discovery and judgment debtor examination. We begin our analysis % reviewing 'the statutes relied upon by Channelside. .
La. C.C.P. art. 2451 governs the examination of ¡judgment debtors and-'third parties by judgment creditors. With regard to the examination of third parties, La. C.C.P. art. 2451(B) provides, “[i]n aid of .execution of the judgment, the judgment creditor may also examine -any person upon-any matter relating to the judgment debtor’s property, as provided in Articles 1421 through 1472.”. The intent of La. C.C.P. art. 2451 is “to assist creditors in executing their judgments by providing them a means to discover assets or property belonging to the debtor which may be subject to seizure.” Parish Nat. Bank v. Lane, 397 So.2d 1282, 1284 (La.1981); see also Cole, Evans & Peterson v. T.F. Mgmt., Inc., 40,774-780, p. 3 (La.App. 2 Cir. 7/7/06), 935 So.2d 841, 843.
La. C.C.P. arts. 1421 through 1472 define the scope and permissible methods of discovery, pertinent in this case to the examination of a third party, JTMC. Generally, a party may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending litigation, “including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible -things [... ].” La. C.C.P. art. 1422.^“Relevant evidence is ‘evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Sercovich v. Sercovich, 11-1780, pp. 4-5 (La. App. 4 Cir. 6/13/12), 96 So.3d 600, 603. “The test of discoverability is not whether the particular - information sought will be admissible at trial, but whether the information sought appears reasonably calculated to lead to the discovery of admissible evidence.” Id. (quoting Wollerson v. Wollerson, 29,183, p. 2 (La.App. 2 Cir. 1/22/97), 687 So.2d 663, 665); see also Lehmann v. American Southern Home Ins. Co., 615 So.2d 923, 925 (La.App. 1st Cir.1993).
It is. well-established in Louisiana jurisprudence that discovery statutes are. to be liberally, and broadly construed to achieve certain basic objectives of the discovery process: (1) to afford all parties a fair opportunity to. obtain facts pertinent to pending litigation; (2) to discover the true facts and compel disclosure of. these facts wherever they may be found;. (3) to assist litigants in preparing for trial; (4) to narrow and clarify the issues between the parties; and.-(5).to facilitate-and expedite the legal process by encouraging settlement or abandonment of less.than meritorious claims. See Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 13-1582, 13-1588, 13-1703, p. 22 (La.5/7/14), 144 So.3d 1011, 1026 (quoting Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125, 129 (La.1983)); see also Sercovich, 11-1780, p. 5, 96 So.3d. at 603. However, there are limitations on discovery,- particularly when-justice, requires that- a party or other person ■ be protected ¡from annoyance, embarrass- *758 merit, oppression, |nor undue burden or expense. Stolzle v. Safety & Systems Assur. Consultants, Inc., 02-1197, p. 2 (La.5/24/02), 819 So.2d 287, 289; see La. C.C.P. art. 1426. In addition, Louisiana jurisprudence has required a showing of relevancy and good cause by a party seeking production of records from a non-party. Id., 02-1197, p. 3, 819 So.2d at 289 (citing Ouachita Nat’l Bank in Monroe v. Palowsky, 554 So.2d 108 (La.App. 2nd Cir. 1989)); see St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., L.L.C., 14-0286, p. 5 (La.App. 4 Cir. 8/27/14), 147 So.3d 1266, 1268.
Relying primarily on the provisions of La. C.C.P. art. 2451(B), Channelside argues that it, as a judgment creditor, is entitled to obtain and examine all of the requested financial documents from JTMC because those documents are directly related to the property interests of its judgment debtor, CGI. Since CGI owns a fifty percent membership interest in JTMC, Channelside argues that the examination of the subpoenaed documents will aid in the execution of its judgment against CGI by allowing Channelside to determine if any indebtedness is owed by JTMC to CGI, which Channelside could then seize in satisfaction of the judgment. In addition, Channelside argues that its requested discovery complies with applicable rules of discovery because JTMC’s financial statements and tax returns are relevant, not privileged, and necessary for the enforcement of its judgment against CGI, and CGI’s fifty percent membership interest in JTMC constitutes sufficiently good cause for the production of those documents. Finally, Channelside argues that Louisiana courts have long recognized that the procedural 112rules pertaining to the examination of judgment debtors are to be liberally construed in favor of a judgment creditor in aid of the execution of a judgment.
While we agree that La. C.C.P. art. 2451 and the related rules of discovery, La. C.C.P. arts. 1421 through 1472, generally permit discovery by a judgment creditor of a third or non-party to a pending litigation, we must balance the rights of a judgment creditor to obtain information in execution of its judgment against the interests and rights of the third party to be protected from harassment, undue burden, and financial loss. See Sercovich, 11-1780, pp. 7-8, 96 So.3d at 604; Bianchi v. Pattison Pontiac Co., 258 So.2d 388, 390 (La.App. 4th Cir.1972). In this case, we must consider the interests of and the rights afforded to JTMC as a non-party, Louisiana LLC under the Louisiana Limited Liability Companies Act, La. R.S. 12:1301, et seq.
Under the Louisiana LLC Act, a member’s interest in the LLC is personal property that is separate and distinct from the property of the LLC. See La. R.S. 12:1329. “A member of an LLC has no direct interest in the LLC’s property. Therefore, a member cannot make the LLC’s property available to the member’s creditors who are not also creditor’s of the LLC.” Susan Kalinka et al, Limited Liability Companies and Partnerships: A Guide to Business and Tax Planning, 9 La. Civ. L. Treatise § 1:44 (4th ed. 2015). Conversely, a creditor of a member cannot seize any of the LLC’s property in satisfaction of the member’s debt. However, pursuant to La. R.S. 12:1331 of the Louisiana LLC Act, a judgment creditor of a member of an LLC may apply to a court of competent jurisdiction for 11sa charging order, whereby “the court may charge the membership interest of the member with payment of the unsatisfied amount of judgment with interest.” La. R.S. 12:1331 further provides that, “[t]o the extent so charged, the judgment creditor shall have *759 only the rights of an assignee of the membership interest.”
The assignment of a membership interest is governed by the provisions of La. R.S. 12:1330, which states in pertinent part:
A. [ ... ] An assignment of a membership interest shall not entitle the as-signee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.
B. Unless otherwise provided in the articles of organization or an operating agreement, the pledge of or granting of a security interest, lien, or other encumbrance in or against any . or all of the membership interest of a member shall not cause the member to cease to be a member or to have the power to exercise any rights or powers of a member, (emphasis added)
In addition, La. R.S. 12:1332 addresses the rights of an assignee óf a membership interest, in pertinent part, as follows:
A. Except as otherwise provided in the articles of organization or a written operating agreement:
(1) An assignee of an interest in a limited liability company shall not become a member or participate in the management of the limited liability company unless the other members unanimously consent in writing. ■
(2) Until the assignee of an interest in a limited liability becomes a member, the assignor shall continue to be a member.
Pursuant to La. R.S. 12:1330 through . 1332, the assignment of a member’s interest in the LLC effectively separates the membership interest into two sets - of rights: financial rights and management rights. See. William A. Neilson, ^Uncertainty in Death and Taxes — the Need to Reform Louisiana’s Limited Liability Company Laws, 60 Loy. L. Rev. 33, 35-36 (Spring, 2014). The assignee is granted only the member’s financial rights while the original member retains management rights and powers, unless and until the assignee become a member. Accordingly, a judgment creditor who obtains a charging order, thereby becoming an as-signee of a member’s interest, is entitled to share in the profits and losses and. receive the distributions to which the member was éntitled. See Kalinka, supra. However, the judgment creditor/assignee is not entitled to exercise any rights or powers associated with the management of the LLC.
The management and management rights of members of LLCs are further governed by La. R.S. 12:1311 through 1320. Particularly relevant to this case, La. R.S. 12:1319 governs the records and information of the LLC and provides, in pertinent part, as'follows:
B. Unless otherwise provided in the articles of organization or an operating agreement, a member may do any of the following:
(1) At the member’s own expense, inspect and copy any limited liability company record upon reasonable request during ordinary business hours.
(2) Obtain from time to time upon reasonable demand the following:
(a) True and complete .information regarding the state of the business and financial condition of the limited liability company.
•(b) Promptly after becoming available, a copy of the limited liability com *760 pany’s federal and state income tax returns for each year,
■ (c) Other information regarding the affairs of the limited liability company as is just and reasonable.
(3) Demand a formal accounting of the limited liability company’s affairs whenever circumstances render it just and reasonable.
D. Except as otherwise provided in the articles of organization or an operating agreement, a limited liability company and its members, managers, and agents may recognize and treat a person registered on its records as a member, as such for all purposes, and as the person | ^exclusively entitled to have and to exercise all rights and privileges incident to the ownership of such membership interests. Rights under this Section shall not be affected by any actual or constructive notice which the limited liability company or any of its managers, members, or agents may have to the contrary.
’ (emphasis added)
.According to the language of La. R.S. 12:1319, the right to obtain and inspect the LLC’s records is reserved to members of the LLC. See Kinkle v. R.D.C., L.L.C., 04-1092, p. 14 (La.App. 3 Cir. 12/8/04), 889 So.2d 405, 413 (finding that an assignee of a member’s interest is not entitled to inspect the LLC’s records, “since this action is reserved for members of the LLC” by La. R.S. 12:1319(B)(1)) (citing Susan Kalinka, Death of a Member of an LLC, 57 La. L. Rev. 451, 452 (1997)).
Relying on the above cited provisions of the Louisiana LLC Act regarding the assignment of a membership interest, JTMC argues that the charging order obtained by Channelside only entitles Chan-nelside to the rights of an assignee of CGI’s membership interest in JTMC and those rights do not include , the inspection of the LLC’s records. JTMC argues that Channelside is entitled only to receive distributions mr allocations of income and share in the profits, as provided in La. R.S. 12:1330, but the right or power to obtain and inspect the financial statements and tax returns of the LLC remains with the original member, CGI, unless and until Channelside becomes a member of JTMC. Accordingly, JTMC argues that Channel-side’s notice of records deposition and subpoena duces tecum must be quashed. Based upon the clear language of the applicable LLC statutes, we agree.
1 ^The facts and posture of this case fall squarely within the parameters of the Louisiana LLC Act.' Channelside obtained a charging order pursuant to La. R.S. 12:1331, thereby charging the membership interest of CGI in JTMC with the payment of the unsatisfied amount of Channelside’s judgment against CGI. We note that the trial court’s judgment granting the charging order specifically states that Channel-side “shall have to the extent so charged only the rights of an assignee of the membership interest” of CGI in JTMC, The record reflects that Channelside has not been admitted as a member of JTMC; Channelside remains only an assignee of CGI’s membership interest in JTMC.[8]
*761 According to La. R.S. 12:1330, Channel-side, as an assignee of a membership interest, shall not be entitled to exercise any rights or powers of a member until such time as it is admitted as a member; the assignment entitles Channelside only to receive distributions, share in profits and losses, and to receive allocations of “income, gain, loss, deduction, credit, or similar item” to which CGI. was entitled. La. R.S. 12:1319 further explains that only a member of the LLC has the right to obtain and inspect the business and financial information and tax returns of the LLC.
“When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no . further | ^interpretation may be made in search of the intent o,f the legislature.” La. C.C. art, 9. As noted by JTMC, the, Louisiana LLC Act affords LLCs different and greater protections from charging creditors t of its members compared to Louisiana laws pertaining to creditors of corporate shareholders or partners in a partnership. Under the Louisiana Civil Code articles pertaining to partnerships, a creditor of a partner may seize the partner’s interest in the partnership, terminate the partner’s interest, and be paid an amount equal to the value of the interest as of the time of seizure. See La. C.C. arts. 2819; 2823; see also Kalin-ka, 9 La. Civ. L. Treatise § 1:44. In Louisiana Business Corporation law, a creditor of a shareholder can seize a shareholder’s stock, thereby acquiring all of the rights associated with holding that stock, including financial rights; voting rights,-if any, and the right to sell the stock. See Kalin-ka, 9 La. Civ.' L. Treatise § 3.2; La. R.S, 12:1-723; see also La. R.S. 12:79 (repealed 2015). By contrast, the Louisiana LLC Act expressly restricts judgment creditors of members of LLCs to obtaining a charging order and being granted only the rights of an assignee of the membership interest unless and -until the assignee becomes a member.
As a general rule of statutory construction, a specific statute controls over a broader, more general statute. See Capital City Press, L.L.C. v. La. State Univ. System Bd. of Sup’rs, 13-2000, 13-2001, pp. 12-13 (La.12/30/14), 168 So.3d 727, 737 (citing Burge v. State, 10-2229 (La.2/11/11), 54 So.3d 1110, 1113). Thus, “when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to |isthe statute- more general in character.” Id.; see State v. One 1990 CMC Sierra Classic Truck, VIN No. 1GTCS142XL25052929, 94-0639, pp. 3-4 (La.11/30/94), 646 So.2d 492, 494-95. Accordingly, we find that the specific provisions of the Louisiana LLC'Act are controlling in this case over the more general statutory provisions governing discovery and the examination of judgment debtors and third parties.
Upon review of the trial court’s judgment, it appears that the trial court attempted to strike a balance between the right of the judgment creditor, Channel-side, to obtain discovery in aid of execution of its judgment and the right of the non-party LLC to be protected from undue burden, loss or damage by applying the protective device of an in camera inspection. However, in consideration of the applicable law, we find merit in JTMC’s argument that the trial court abused its discretion in partially granting Channel-side’s motion to compel and ordering the production of certain financial documents of JTMC dating from January 1, 2011 to the present for an in camera inspection by the trial court to determine what information may be disclosed to Channelside.
*762 As discussed above,- Channelside does not have the right to obtain or inspect any business or financial documents of the LLC. Consequently, none of the documents to be produced for the in camera inspection may be disclosed to Channelside after review by the trial court.
Furthermore, we find the trial court abused its discretion by ordering the production of documents dating back to January 1, 2011, a date that has no [ ^relevance to the underlying money judgment against CGI or the assignment of CGI’s membership interest to Channelside. Channel-side’s judgment against CGI was rendered on October 25, 2013, and Channelside obtained the charging order to become an assignee of CGI’s membership interest in JTMC on April 8, 2014. Accordingly, Channelside only became entitled, as an assignee of CGI’s membership interest, to receive any distributions, profits, etc. that were due to CGI from JTMC as of April 8, 2014. In light of this fact, we find that the trial court’s order to produce documents dating back to January 1, 2011 was not sufficiently supported by any relevance or showing of good cause. Before ordering discovery from a third party, which has invoked its right to be protected from undue hardship, loss, or damage, the trial court must be convinced of the relevancy and necessity of such discovery in achieving its intended objective. See St. Bernard Port, 14-0286, p. 5, 147 So.3d at 1268; Stolzle, 02-1197, p. 3, 819 So.2d at 289; Bianchi, 258 So.2d at 390.
Pursuant to La. R.S. 12:1330(A), the assignment of CGI’s membership interest in JTMC to Channelside entitles Channelside “only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.” While we acknowledge that some of the documents that the trial court ordered to be produced for the in camera inspection may contain relevant information regarding the distributions, income, etc. due to CGI from JTMC upon the assignment of CGI’s membership interest to | go Channelside, we find the trial court’s judgment is overbroad and does not sufficiently protect the interests of JTMC as a non-party and a Louisiana LLC.
There is a lack of Louisiana jurisprudence directly on point in this matter but we briefly discuss two cases cited by each side. Channelside contends that this Court’s decision in Sercovich — allowing the requested business and financial documents of two LLCs to be produced subject to an in camera inspection by the trial court to determine relevancy — provides precedent for the production of an LLC’s documents for inspection, review, and disclosure by the trial court. Id., 11-1780, p. 8, 96 So.3d at 604. However, we find the facts of that case and the applicable law are distinguishable from the instant case.
In Sercovich, the underlying and ongoing suit was a divorce proceeding in which the plaintiff, Ms. Sercovich, was seeking interim and final periodic spousal support from the defendant, Mr. Sercovich. Seeking to determine her husband’s interests in and income from two LLCs for the purpose of determining final periodic support, Ms. Sercovich issued a notice of records deposition and subpoena duces tecum to the LLCs for production of various business and financial records covering several years. The LLCs filed a motion to quash, which the trial court denied. This Court affirmed the trial court’s denial of the motion to quash finding that the information sought was reasonably calculated to lead to the discovery of admissible evidence in the ongoing divorce proceeding. Id., 11-1780, pp. 7-8, 96 So.3d at 604. In the interest of *763 protecting the right of third parties, however, this | ¾1 Court ordered the trial court to conduct an in camera inspection of the documents to determine which were relevant to the divorce proceedings. Id.
Notably, Sercovich does not involve a judgment creditor of a member of the LLC; it involves only a party seeking discovery from a third party in the course of ongoing litigation. There are no specific provisions of the Louisiana LLC Act applicable to the facts of Sercovich. Con-séquently, the rules of discovery are directly on point and controlling in that case. By contrast, the Louisiana:LLC Act expressly provides for the rights of judgment creditors of members of an LLC.
In our review of Louisiana jurisprudence, there appears to be only one case that is instructive on the matter before this Court. In Kinkle v. R.D.C, 04-1092 (La.App. 3 Cir. 12/8/04), 889 So.2d 405, plaintiff was the personal representative of the estate of a deceased LLC member. Plaintiff filed a petition for declaratory judgment and for accounting against the LLC, seeking judgment declaring that the estate was entitled to its proportionate share of distributions and to an accounting of all of the LLC’s activities since the member’s death. Citing the specific provisions of La. R.S. 12:1333 of the Louisiana LLC Act, the Third Circuit found that plaintiff, as the personal representative of the deceased member, became an assignee of decedent’s membership interest, in the LLC. Id., 04-1092, pp. 12-13, 889 So.2d at 412. Applying the specific provisions relative to the assignment of a membership interest, particularly La. R.S. 12:1330, the Third Circuit found that plaintiff was entitled to all distributions-to which decedent was entitled to from the date of death, but she was not entitled to an accounting of the distributions. The |22court found that plaintiff, “as an assignee, is not entitled to inspect [the LLC’s] records, since .this action is reserved for members of the LLC.” Id., 04-1092, p. 14, 889 So.2d at 413. In the instant case, we likewise apply the specific provisions, of the Louisiana LLC Act and find that Channelside, as an as-signee, is not entitled to inspect any of JTMC’s business and financial records because that right is reserved for members of the LLC.
Upon review of this matter in light of the applicable Louisiana law, we find that the trial court erred in partially granting Channelside’s motion to compel and partially denying JTMC’s motion to quash. We further find that the trial court abused its discretion in ordering JTMC to “deliver to the Court for an in camera inspection evidence of any indebtedness by [JTMC] unto [CGI] from January 1, 2011 through the present including,' but not limited to promissory notes, loans, payments or distributions for review and further ruling by the Court.” In accordance with the applicable provisions of the Louisiana LLC Act, Channelside, as an assignee of CGI’s membership interest in JTMC, is entitled only to receive all distributions to which CGI was entitled to as of the date of the assignment; Channelside is expressly restricted from inspecting the records, of JTMC.
CONCLUSION
For the foregoing reasons, we reverse that part of the trial court’s September 25, 2014 judgment ordering JTMC to deliver documents for an in camera inspection, review, and further ruling by the trial court. We further amend the trial court’s júdgment to wholly grant JTMC’s motion to quash the records | ^deposition and subpoena duces tecum and wholly deny Chan-nelside’s motion to compel.
MOTION TO DISMISS APPEAL DENIED; REVERSED IN PART AND AMENDED IN PART
TOBIAS, J., concurs.

,' The' record reflects that JTMC was formed as a Louisiana LLC on June 6, 2008, in accordance with the. provisions of the Louisiana Limited Liability Companies Act, La. R.S. 12: § 1301, et seq. The initial report of JTMC filed with -the Louisiana Secretary of State lists the registered, office of JTMC at 227 Bourbon Street in New Orleans. The management of 'JTMC is reserved to its three members: TFS I, LLC; TFS II, LLC; and CGI. The record further reflects that JTMC is the 100%, owner of The Beach on Bourbon, located at 227 Bourbon Street.

. La. R.S. 12: § 1331 provides,
On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of judgment with interest. To the extent so charged, the judgment creditor shall have only the rights of an assignee of the membership interest. This Chapter shall not deprive any member of the benefit of any exemption laws applicable to his membership interest,

. The subpoena requested production by JTMC of all applications for alcoholic beverage licenses, leases and subleases, or assignments of such, for the premises at 225-227 Bourbon Street; all bank account statements and registers; all federal and state income tax' returns; all state sales tax returns; all Operating Agreements and amendments; all financial statements; and all general ledgers from 2008 to the present.

.The trial court’s September 25, 2014 judgment stated in relevant part:
IT IS ORDERED, ADJUDGED AND DECREED that the Motion to Compel filed on behalf of Channelside Services, LLC, is GRANTED IN PART and DENIED IN PART and the Motion to Quash filed on *755 behalf of JTMC Enterprises, LLC, is GRANTED IN PART and DENIED IN PART as follows:
On or before October 3, 2014, JTMC Enterprises, LLC shall deliver to the Court for an in camera inspection evidence of any indebtedness by JTMC Enterprises, LLC unto Chrysochoos Group, Inc., from January 1, 2011 through the present including, but not limited to promissory notes, loans, payments or distributions for review and further ruling by the Court.

. Channelside Services, LLC v. Chrysochoos Group, Inc., unpub., 14-1156 (La.App. 4 Cir. 11/18/14).

. JTMC filed a motion to consolidate the sus-pensive appeal filed by JTMC and the devolu-tive appeal filed by Channelside, in the interest of clarifying the status of the appeals and the parties thereto. Although JTMC and Channelside weré each granted an appeal, the entire record of the case was lodged with this Court under one appeal number and all briefs and motions were filed under appeal number 2015-0064. Thus, we find the motion to consolidate is moot.

. In ⅛ appellee brief to Channelside’s appeal, JTMC also argues that there is no basis for appellate jurisdiction over Channelside’s appeal because the proper procedure to seek "further, review of this Court’s previous writ disposition is to request a rehearing'or apply to the Louisiana Supreme Court for a writ of certiorari. ' We find no merit in this argument. The Uniform Rules do not provide for a rehearing from a denial of an application for supervisory writs. State v. Crandell, 05-1060, p. 3 (La.3/10/06), 924 So.2d 122, 124; see Y.F.B. v. R.D.R., 01-0345 (La.4/12/01), 787 So.2d 276. An application for rehearing will be considered in cases in which the appellate court has (1) granted a writ application on the merits; (2) dismissed an appeal; (3) or ruled on the merits of an appeal. Uniform Rules-Court of. Appeal Rule 2-18.7; Rule 4-9, As discussed with regard to the motion, to dismiss Channelside’s appeal, this Court’s previous denial of Channelside’s writ application does not preclude this Court’s reconsideration of the same issue on appeal of a final judgment.

. At the hearing on Channelside’s motion and application for a charging order, on March 28, 2014, Channelside offered and introduced into evidence a certified copy of JTMC’s annual report filed with the Louisiana Secretary of State’s office. JTMC’s articles of organization . do not include any provisions regarding the rights of an assignee of a membership interest. Therefore, in accordance with La. R.S. 12:1332, Channelside shall not become a member of JTMC unless and until the other members of JTMC unanimously consent in writing.